In the
United States Court of Appeals
For the Seventh Circuit

No. 98-3431

Iqbal Mathur,

Plaintiff-Appellant,

v.

Board of Trustees of Southern Illinois
University, et al.,

Defendants-Appellees.

Appeal from the United States District Court
for the Southern District of Illinois.
No. 95 CV 04097--James L. Foreman, Judge.

Argued May 14, 1999--Decided March 27, 2000

Before Flaum, Easterbrook, and Diane P. Wood, Circuit
Judges.

Diane P. Wood, Circuit Judge.  Iqbal Mathur
convinced a jury that the Board of Trustees of
Southern Illinois University (SIU) retaliated
against him for filing suit alleging
discrimination on account of his race, in
violation of Title VII of the Civil Rights Act of
1964, 42 U.S.C. sec.2000e-5 et seq., but the
district court overturned that result when it
granted judgment as a matter of law in favor of
SIU after the verdict was returned. The judge did
so not because of any overriding legal principle,
but for a more conventional reason: he was
persuaded that, as a theoretical matter, Mathur
had not presented enough evidence of retaliatory
motive to reach the jury. Mathur challenges the
judgment in SIU's favor in this appeal. We
conclude, on our de novo review of the court's
decision, that this was a proper case for the
jury, and we therefore reverse and remand.

I

Mathur is a person of East Indian origin. By
all accounts, he has been for many years a
successful and highly regarded member of the
faculty at SIU. He joined SIU's College of
Business Administration ("College") as a tenured
professor in the College's Finance Department in

1977. For seventeen years (between 1979 and 1992) he served as the Department Chair. He stepped down in 1992 to accept a position as Interim Dean of the College. Mathur also put his name forward for consideration as permanent Dean.

He was not successful in that effort. Instead, the College selected Thomas Keon, who is white, for its new permanent Dean. Mathur believed that this decision was tainted by both racial and national origin discrimination, and he filed a charge to that effect with the EEOC on March 25, 1994. Nevertheless, in June 1994, SIU asked Mathur to continue as Interim Dean until Dean Keon assumed his new position in January 1995. Mathur declined and returned to his former position as Chair of the Finance Department.

On September 30, 1994, Mathur and Keon attended the College's annual "Dean's Reception." Their accounts of the event are quite different. Mathur testified that he and Keon chatted and that he advised Keon that he, too, had been a candidate for the deanship and he had filed a charge of discrimination against SIU. At that point, according to Mathur, Keon frowned, ceased speaking, and made it clear that the conversation was over. Keon claimed to have no recollection of this conversation. (The jury was obviously entitled to believe whichever man it chose.)

In early January 1995, Keon officially assumed the position of Dean. As Dean, he was in charge of the College's Executive Committee, which included himself, the Associate Dean, and the Chairs of each of the College's four departments--including Mathur. The purpose of the Executive Committee is to deal with overall issues related to the College, such as teaching, research, service, and fund-raising. Later that month, Mathur received a right-to-sue letter from the EEOC. He did not mention the letter to Keon, nor did he say anything about an intention to file suit; he did, however, discuss his plans with other members of the College community.

On April 4, 1995, Keon called Mathur into his office and initiated a conversation, the substance of which is disputed. According to Mathur, Keon "informed me that what I was doing was not positive and it would reflect negatively on the College of Business. He did not want me in an administrative position in the College of Business, and he wanted me to resign." Mathur assumed Keon was talking about the lawsuit. Keon, however, maintains that he was talking about Mathur's performance as a member of the Executive Committee. In Keon's opinion, none of the department chairs were adequately participating in the Executive Committee meetings. They weren't

"team players" and were interested only in what was good for their particular departments. It was time, Keon thought, to "clean house." Indeed, each of the chairs was out by the end of the academic year: in response to Keon's request, Management Department Chair R.E. Melcher submitted his resignation on April 4; Keon removed Mathur, who refused to resign, as Finance Department Chair on April 24; and the terms of the Marketing and Accounting Department Chairs, who were merely "acting" chairpersons, were allowed to expire.

Although no longer Department Chair, Mathur remained a tenured faculty member with the College. On July 7, 1995, Keon gave Mathur a formal performance evaluation, in which he rated Mathur's skills on a scale of 0 to 6 (with 6 being the most favorable). He gave Mathur's research skills a 6, his teaching skills a 5.5, and his administrative skills a 2.5.

On April 14, 1995, Mathur filed suit alleging that SIU discriminated against him on account of his race and national origin when it failed to hire him as Dean. On July 19, after Keon removed him as Department Chair, Mathur amended his complaint to include a retaliation claim. At the close of discovery, SIU moved for summary judgment. The district court granted SIU's motion with respect to the failure-to-hire claim but denied the motion with respect to the retaliation claim. The case went to trial, and the jury returned a verdict in favor of Mathur, awarding him $20,283.00 in back pay and $250,000 in compensatory damages. Mathur's success was short lived, however. Overturning the jury verdict, the district court granted SIU's renewed motion for judgment as a matter of law under Rule 50 of the Federal Rules of Civil Procedure. Mathur appeals only the latter ruling; he has not challenged the district court's dismissal of the failure-to-hire claim.

II

A. Judgment as a Matter of Law on Retaliation Claims

We review a trial court's grant or denial of judgment as a matter of law under Rule 50 de novo. See Emmel v. Coca-Cola Bottling Co. of Chicago, 95 F.3d 627, 629 (7th Cir. 1996). Using the same standard as that applied by the district court, Willis v. Marion County Auditor's Office, 118 F.3d 542, 545 (7th Cir. 1997), we limit our inquiry to "whether the evidence presented, combined with all reasonable inferences permissibly drawn therefrom, is sufficient to support the verdict when viewed in the light most

favorable to the party against whom the motion is directed. . . . In other words, we are limited to assessing whether no rational jury could have found for the plaintiff." Emmel, 95 F.3d at 629-30, quoting McNabola v. CTA, 10 F.3d 501, 513 (7th Cir. 1993); see also Cygnar v. City of Chicago, 865 F.2d 827, 834 (7th Cir. 1989). In doing so, "this court may not step in and substitute its view of the contested evidence for the jury's." Emmel, 95 F.3d at 634.

Title VII makes it unlawful for an employer to "discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice . . . or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing" under the statute. 42 U.S.C. sec. 2000e-3(a). In other words, it is unlawful for an employer to retaliate against an employee for exercising her rights under Title VII. "To establish a prima facie case of retaliation, an employee must show that (1) he engaged in statutorily protected expression; (2) he suffered an adverse action; and (3) there is a causal link between the protected expression and the adverse action." Johnson v. Zema Systems Corp., 170 F.3d 734, 746 (7th Cir. 1999), citing Eiland v. Trinity Hosp., 150 F.3d 747, 753 (7th Cir. 1998).

Although Mathur originally structured the proof of his case under both the "direct" and "indirect" methods, at this stage of the game those distinctions are no longer relevant. In reviewing the district court's grant of judgment as a matter of law, we do not need to march through the familiar steps set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Diettrich v. Northwest Airlines, Inc., 168 F.3d 961, 965 (7th Cir. 1999). Since the district court held a trial on the merits, we need only ask whether, viewing the evidence in its totality, Mathur provided sufficient evidence that a rational jury could have concluded that retaliation was a determining factor in Dean Keon's decision to remove him as Chair of the Finance Department. Willis, 118 F.3d at 545; see also Grizzle v. Travelers Health Network, Inc., 14 F.3d 261, 267 (5th Cir. 1994) ("[T]he ultimate issue is whether [ ] there was sufficient evidence for a reasonable finder of fact to conclude that the official reason for [plaintiff's] discharge was 'pretextual', and that the true reason therefore was retaliation for her complaints of [ ] discrimination."). We note in passing that the parties have devoted a considerable amount of unnecessary attention to the question whether the bulk of Mathur's evidence of discrimination is direct or

circumstantial. At this point, it is a distinction without legal consequence.

At trial, Mathur offered the following evidence from which a rational jury could reasonably infer that Mathur's discrimination suit was the primary reason behind Dean Keon's decision to demote him. To begin, Mathur presented evidence that Keon knew about the discrimination suit. In September 1994, Mathur met Keon and told him about his EEOC charge; Mathur informed Keon because he felt it was important for Keon, as Dean, to know about the charges. Upon hearing about Mathur's charges, Keon frowned and cut their conversation short. Professor Robert Waldron testified that he saw Mathur and Keon "deeply engrossed in conversation," although he could not hear what they were saying. In addition, when Mathur received a right-to-sue letter on January 18, 1995, he discussed his plans to sue with many of his colleagues, including the fact that he received the filing materials from his attorney's office. Although he did not directly inform Keon of the letter, his possession of it was widely known in his department.

Furthermore, the jury could have concluded that Keon's interactions with Mathur revealed that he was unhappy with Mathur's decision to file discrimination charges. On April 4, 1995, Keon called Mathur into his office and told him that what he was doing "was not positive and it would reflect negatively on the College of Business." Mathur assumed Keon was referring to his EEOC charge. Keon further stated that he did not want Mathur in an administrative position and asked him to resign as Department Chair. In the weeks that followed, Keon pressured Mathur to resign and, on April 24 (the day after the news of Mathur's suit was reported on the campus radio station), Keon removed him. In addition, after officially becoming Dean, Keon repeatedly slighted Mathur. For example, when Keon traveled to Hong Kong to visit a program that was implemented when Mathur was Acting Dean, he did not speak to Mathur regarding Mathur's experiences or contacts there. Mathur also testified that Keon did not respond to information that Mathur had sent him regarding possible donors to the College; that Keon presented a proposal (albeit in a different format) that Mathur had actually prepared; and that Keon snubbed him socially and never took him to lunch.

Finally, Mathur submitted evidence from which the jury could have inferred that Keon's claim that Mathur was an ineffective participant in the Executive Committee was bogus. Mathur testified as to a handful of examples in which he

demonstrated himself to be a "team player" interested in the good of the College as a whole, rather than his department. For example, he cited two times in which he spoke up about issues that were not on the committee meeting's agenda but that he considered important for the College. He also proposed means of increasing College enrollment as well as raising funds for the College.

Bearing in mind the standard of review that applies to judgments as a matter of law, whether pre-verdict or post-verdict, we conclude that the district court should not have granted SIU's motion for judgment as a matter of law. See, e.g., Lane v. Hardee's Food Systems, Inc., 184 F.3d 705, 707 (7th Cir. 1999). The jury was entitled to believe Mathur's version of his direct contacts with Keon and to reject Keon's own explanation of the decision to remove Mathur as chair of the department.

This case is similar to Soto v. Adams Elevator Equipment Co., 941 F.2d 543 (7th Cir. 1991), in which this court reversed the district court's decision to overturn a jury verdict that the defendant employer had retaliated against the plaintiff employee for filing an EPA claim. In Soto, the plaintiff submitted evidence of an ambiguous statement made by her employer that she interpreted to mean that she had been demoted because of her lawsuit, as well as evidence that she had received negative treatment from her supervisors subsequent to filing suit. Soto, 941 F.2d at 552. Although not overwhelming, the Soto plaintiff's evidence was sufficient to support the jury verdict, as is Mathur's evidence in this case. See also Floyd v. Kellogg Sales Co., 841 F.2d 226, 228-29 (8th Cir. 1988) (reversing grant of JNOV where plaintiff's evidence of retaliation was centered on three statements); contrast Grizzle, 14 F.3d at 267-68 (upholding lower court's grant of JNOV overturning jury verdict where evidence of retaliatory motive presented by plaintiff would not support a "reasonable jury finding of retaliation without engaging in impermissible speculation").

In the alternative, SIU argues that Keon was determined to "clean house" and would have terminated Mathur as Department Chair regardless of any retaliatory motive. See McNutt v. Board of Trustees of the Univ. of Ill., 141 F.3d 706, 709 (7th Cir. 1998) (holding that the Price-Waterhouse mixed-motives defense applies to retaliation claims). The jury, however, was properly instructed about this defense and rejected it. Given that Mathur presented evidence to undercut Keon's claim that he had decided to remove all the department chairs because they

were not participating effectively in Executive Committee meetings, there is no reason to reject the jury's decision to believe Mathur's version of events rather than SIU's.

Before leaving this subject, we touch briefly on a point that was raised in oral argument by the panel, but on which SIU did not rely in its brief. SIU might have argued, relying on Webb v. Board of Trustees of Ball State Univ., 167 F.3d 1146 (7th Cir. 1999), that Keon demoted Mathur not because of his protected activities, but instead because he was wasting his time pursuing personal grievances and antagonisms instead of devoting himself to teaching and research. That argument carried the day in Webb, where this court denied the sec. 1983 retaliation claims of several state university employees against their university. That ruling rested in part on the conclusion that universities may "insist that members of the faculty . . . devote their energies to goals such as research and teaching" rather than pursuing personal grievances and antagonisms. The record here contains none of the facts that would be needed to evaluate such a theory, such as evidence about how much time Mathur was devoting to his retaliation claim as opposed to his teaching and research. (Evidently even Keon was willing to concede that Mathur's performance was outstanding in the latter two areas, as the July 7 performance review indicates. Keon gave Mathur the highest possible score for research, a 6, and a score almost that high for his teaching, a 5.5.) We note as well that SIU has not argued, and there is no reason to suppose, that the Title VII anti-discrimination and retaliation provisions do not apply to highly placed employees. The Supreme Court's decision in Hishon v. King & Spalding, 467 U.S. 69 (1984), contains not a hint of such an exception. The law protects even presidents of universities against discrimination based on race, sex, and the other categories mentioned in the statute, and it similarly must protect even presidents from retaliatory actions designed to punish invocation of those rights. In any event, that issue is not before us today.

B. New Trial

SIU next argues that in the event that this court finds it is not entitled to judgment as a matter of law, it should nonetheless get a new trial. Before the district court, SIU argued that the verdict was against the weight of the evidence, that the jury should have received SIU's proposed special interrogatory verdict form, and that the damages were excessive. On appeal, SIU makes only two of those arguments: it

reiterates that the jury verdict was against the manifest weight of the evidence and that $250,000 in compensatory damages for "emotional pain and suffering, inconvenience, and mental anguish" is an excessive award. However, both for the reasons we have already discussed and because we review orders denying new trials only for a clear abuse of discretion, see Westchester Fire Ins. Co. v. General Star Indemnity Co., 183 F.3d 578, 582 (7th Cir. 1999); Slane v. Mariah Boats, Inc., 164 F.3d 1065, 1067 (7th Cir. 1999), we make no comment on the first argument other than to say that the verdict was supported by sufficient--albeit not overwhelming--evidence and that we find no abuse of discretion in the court's decision.

The standard of review that applies to a limited request for a new trial on the grounds of excessive damages is the same as the general standard--abuse of discretion. Riemer v. Illinois Dept. of Transp., 148 F.3d 800, 808 (7th Cir. 1998). In its renewed motion for judgment as a matter of law or a new trial, SIU argued that the damages award was excessive and the court should therefore either grant a new trial or alter or amend the damages award. In its memorandum and order denying SIU's motion for a new trial, however, the district court had no occasion to address SIU's excessive damages argument, in light of its other ruling. Under the circumstances, we think it appropriate to remand on this issue, so that the district court may consider SIU's request for remittitur.

    C.  Motion to Strike

As a final note, SIU filed a motion to strike portions of Mathur's Reply Brief referencing facts not contained in the record. On April 29, 1999, the motions panel ordered that this issue would be determined by the merits panel. Because Mathur's factual allegations in the Reply Brief do not affect the disposition of this case and we have not taken them into account in our own deliberations, we deny the motion.
III

"It is well settled that if the trial court erroneously grants judgment notwithstanding the verdict, the appellate court may reverse and order reinstatement of the verdict of the jury." Kolb v. Chrysler Corp., 661 F.2d 1137, 1140 (7th Cir. 1981). Because we find that the district court erroneously granted judgment as a matter of law for SIU, we Reverse that judgment. We Remand to the district court for consideration of SIU's motion for a new trial or remittitur on damages, and we Deny SIU's motion to strike.