Lori A. DAVID, Plaintiff,

v.

CATERPILLAR, INC., Defendant.

No. 98–1250.

United States District Court,
C.D. Illinois.

Jan. 16, 2002.

---

Patricia Benassi, Althena Downey, Peoria, IL, for Plaintiff.

Michael Warner, Laura Lindner, Chicago, IL, Johna Grabrielle Anderson, Peoria, IL, for Defendant.

## ORDER

MIHM, District Judge.

This matter is now before the Court on Defendant, Caterpillar, Inc.'s ("Caterpillar"), Renewed Motion for Judgment as a Matter of Law or, Alternatively, for a New Trial. For the reasons set forth below, the Motion [# 135] is GRANTED IN PART with respect to the damages award and DENIED in all other respects.

## BACKGROUND

This matter proceeded to trial by jury. On May 18, 2001, the jury returned a verdict that Caterpillar had retaliated against Plaintiff, Lori David ("David"), by not promoting her to the position filled by Joni Lusher ("Lusher") and found in favor of Caterpillar in all other respects. On May 21, 2001, the jury reached a verdict on damages, awarding compensatory damages in the amount of $100,000.00 and punitive damages in the amount of $750,000.00. After briefing by the parties, the Court then awarded David back pay in the amount of $35,606.71 plus prejudgment interest calculated at the prime rate.

Caterpillar has now filed a Renewed Motion for Judgment as a Matter of Law or, Alternatively, for a New Trial. The matter is now fully briefed, and this Order follows.

## DISCUSSION

I. *Renewed Motion for Judgment as a Matter of Law*

Rule 50 permits a court to grant a motion for judgment as a matter of law when "there is no legally sufficient evidentiary basis for a reasonable jury to find for [a] party on [an] issue." *Tincher v. Wal–*

*Mart Stores, Inc.,* 118 F.3d 1125, 1129 (7th Cir.1997), *citing Emmel v. Coca–Cola Bottling Co.,* 95 F.3d 627, 629 (7th Cir.1996). The Court reviews whether "the evidence represented, combined with all reasonable inferences permissibly drawn therefrom, is sufficient to support the verdict when viewed in the light most favorable to the party against whom the motion is directed." *Mathur v. Board of Trustees of Southern Illinois University,* 207 F.3d 938, 941 (7th Cir.2000); *Tincher,* 118 F.3d at 1129. The Court may "not step in and substitute its view of the contested evidence for the jury's"; if a rational jury could have found for the plaintiff, the jury's verdict must be upheld. *Mathur,* 207 F.3d at 941; *Tincher,* 118 F.3d at 1129; *Emmel,* 95 F.3d at 629. Courts are to "apply this standard stringently in discrimination cases, where witness credibility is often crucial." *Williams v. Pharmacia, Inc.,* 137 F.3d 944, 948 (7th Cir.1998); *see also Collins v. Kibort,* 143 F.3d 331, 335 (7th Cir.1998).

### A. Liability

■ Caterpillar argues that the testimony of Ron Dieckow ("Dieckow") should not have been admitted at trial. Dieckow, who was a security officer at another plant, testified that following Lusher's promotion to security sergeant, he asked Larry Mitzelfelt, the captain of the Mossville security force, how Lusher got the job and was told that Mitzelfelt "had been told by upper management that the next promotion in the department would have to be a female in response to a lawsuit that was recently filed in East Peoria by another female security officer." Shortly thereafter, Mitzelfelt told him "that they had looked at every female employee in our department as a candidate for sergeant"

and "even considered his secretary, Sandy Daniels, as a possible candidate for the sergeant's job." Caterpillar suggests that Dieckow's testimony provided the only evidence of retaliation with respect to the Lusher promotion.

Caterpillar complains that although the nature of Dieckow's testimony was known to David's counsel since some time in 1999, when he consulted her about possibly filing his own employment suit against Caterpillar, David failed to timely disclose Dieckow or the substance of his testimony. In fact, Caterpillar contends that Dieckow was never even mentioned as a possible witness until David filed her witness list with the final pretrial order.[1] On April 2, 2001, Caterpillar filed a Motion in Limine seeking to exclude any testimony by Dieckow as a result of improper disclosure. During a hearing on May 4, 2001, Caterpillar argues that it learned for the first time that Dieckow had information concerning comments that were purportedly made to him by Mitzelfelt about David.

On May 10, 2001, Caterpillar's counsel met with Dieckow to find out what facts he knew which might be relevant to the David case. During this interview, Dieckow stated that Mitzelfelt had told him that "Caterpillar had to make a woman a security sergeant because another female fire and security officer filed a lawsuit."

Dieckow's testimony was ultimately allowed over objection. Caterpillar argues that the untimely disclosure of Dieckow and the nature of his testimony was prejudicial as it deprived Caterpillar of the opportunity to depose him or investigate the matter by talking to other security captains at the meeting in which Lusher's promotion was discussed or talking to Dieckow's coworkers or discussing David's

---

1. Although Caterpillar does not indicate precisely when the final pretrial order was filed, the Court notes for the record that David filed her proposed pretrial order on December 7, 1999, nearly a year and a half prior to trial.

claims with Mitzelfelt. Without his testimony, Caterpillar contends that there is not enough evidence of retaliation to sustain the jury's verdict.

While the Court agrees that David's counsel was less than forthcoming with respect to the particular aspect of Dieckow's testimony at issue here and could have handled the situation differently, Dieckow was listed as a potential witness nearly a year and a half prior to trial, yet Caterpillar did not attempt to interview him and waited until approximately a month prior to trial to file its motion in limine seeking to exclude any testimony. During this lengthy lapse in the proceedings, there was nothing preventing Caterpillar from interviewing Dieckow and learning what information he possessed, just as it did during the week before trial. Furthermore, although Caterpillar claims that it was unable to defend against Dieckow's testimony, it introduced evidence that directly rebutted Dieckow's testimony when it called Mitzelfelt to testify that he had had no such conversation with Dieckow.[2] Caterpillar did not request a continuance so that it could obtain additional information in an effort to rebut Dieckow's testimony, and there has been no showing of bad faith on the part of David's counsel. Thus, the Court concludes that the exclusion of Dieckow's testimony was not required and that the admission of such testimony was not error.

■ However, even assuming that the admission of Dieckow's testimony was erroneous, Caterpillar would still not be entitled to judgment as a matter of law as the record reveals a legally sufficient evidentiary basis for a reasonable jury to have found as it did. Contrary to Caterpillar's bald assertion, Dieckow's testimony was not the only evidence from which the jury could have found retaliation.

There was substantial testimony concerning the respective qualifications and experience of both David and Lusher. Moreover, the evidence (which included shifting explanations for which qualifications were deemed important for purposes of promotion) was such that the jury could reasonably have doubted Caterpillar's assertion that its management staff honestly believed Lusher to be the better candidate; the mere fact that Caterpillar's witnesses asserted that they honestly believed Lusher to have been more qualified does not mean that the jury was required to believe them. David also testified that she was treated differently by her superiors after complaining internally about what she perceived to be the differential treatment of males in the promotion process, as well as certain comments that she deemed sexist in nature, and was virtually ignored after filing her charge of discrimination. She further stated that after filing her charges, management staff in a position to influence promotional decisions attempted to deny her an educational leave of absence, block her use of vacation time, and deliberately avoided completing paperwork that would have allowed her the opportunity to apply for another promotional opportunity. Another witness, Rebecca Smith, also testified that she believed that she had been discriminatorily discharged from the security department after having complained about sexual harassment.

Although Caterpillar presented contradictory evidence, it was up to the jury to assign credibility and resolve conflicts in the evidence. The jury obviously deemed David's evidence to be more credible, and it is not the province of the Court to step

---

2. What other coworkers or captains may have been able to add to Mitzelfelt's outright denial is purely speculative.

in and substitute its view of the contested evidence for the jury's where the jury's findings were reasonable. As the Court finds that the totality of the evidence presented at trial, combined with all reasonable inferences permissibly drawn therefrom, was sufficient to support the verdict when viewed in the light most favorable to David, Caterpillar's Renewed Motion for Judgment as a Matter of Law is denied as it pertains to the liability portion of the trial.

### B. Damages

Caterpillar also challenges the jury's verdict on damages, arguing alternatively that the compensatory and punitive damages awarded were either unwarranted or excessive.

### (1) Compensatory Damages

■ Caterpillar argues that there is no basis for awarding compensatory damages at all, as David did not seek medical or psychological treatment or take any medications for her symptoms. The Court disagrees. It is well-settled that Title VII plaintiffs can prove emotional injury by testimony without medical support, although the lack of such evidence is nevertheless relevant to the amount of damages awarded. *See, e.g., Avitia v. Metropolitan Club of Chicago,* 49 F.3d 1219, 1227–29 (7th Cir.1995); *Turic v. Holland Hospitality, Inc.,* 85 F.3d 1211, 1215 (6th Cir.1996). Thus, the Court rejects Caterpillar's argument that the record does not justify any award of compensatory damages.

■ That being said, the $100,000.00 compensatory damage award does cause this Court "to raise a suspicious judicial eyebrow." *TXO Prod. Corp. v. Alliance Resources Corp.,* 509 U.S. 443, 482, 113 S.Ct. 2711, 125 L.Ed.2d 366 (1993) (O'Connor, J., dissenting). Although the damages awarded David are somewhat higher than those awarded in comparable discrim-

ination cases in this circuit, the Court does not believe that the award is such that this case presents the unusual situation of requiring a new trial on liability as a result of passion and prejudice. Any argument that the jury's award of damages was born of passion and prejudice, thereby warranting a new trial on the issue of liability, is negated by the jury's finding that while Caterpillar is liable for retaliation with respect to one promotional decision, it is not liable for discrimination or retaliation with respect to the other promotional decisions alleged. If the jury were truly prejudiced against Caterpillar, the Court believes that it would have been unable to use reason and common sense to return a verdict in favor of Caterpillar on these other claims. Seventh Circuit authority is clear that when a damages award is found excessive, the proper remedy is generally a remittitur, not a new trial. *See Davis v. Consolidated Rail Corp.,* 788 F.2d 1260, 1263 (7th Cir.1986) ("Only in an unusual case will a court order a new trial on liability because of an error in assessing damages").

■ In determining whether the damages award was excessive and requires a remittitur, this Court must consider whether an award of $100,000.00 is rationally connected to the evidence and comparable to awards made in similar cases. *See U.S. E.E.O.C. v. AIC Security Investigations, Ltd.,* 55 F.3d 1276, 1285–86 (7th Cir.1995). Unless the amount of the jury's award is "monstrously excessive," bears no rational connection to the evidence, or is not roughly comparable to awards made in similar cases, the court will not disturb the jury's damages calculation. *Cygnar v. City of Chicago,* 865 F.2d 827, 847 (7th Cir.1989).

■ At trial, David testified that after learning of Lusher's promotion, she went to bed immediately after returning home from work rather than participating in her

normal activities for about a two-week period, had difficulty sleeping, cried, and experienced stomach aches. She felt "robbed" and "cheated", "like a truck had just ran me over"; she became very depressed. David further stated that earning such a promotion was very important to her and described her efforts to position herself to obtain promotion to security sergeant. After Lusher was promoted, she felt that she had no choice but to do whatever she could to reposition herself for a career in marketing because her career in security appeared to have reached a dead end; this resulted in embarrassment, as well as the inconvenience of having to use her savings in order to finance the completion of her business degree.

This evidence clearly supports some award of compensatory damages for David's mental distress. However, David was never unemployed, and although she had to use some of her savings to support her during her educational leave, Caterpillar paid for her educational expenses, and there is no evidence indicating that she suffered the kind of serious financial problems discussed in the case law. There is no evidence that she sought counseling or was treated for emotional harm or that her depression and other symptoms continued for any sustained period of time.

A review of mental distress awards leads the Court to conclude that $50,000.00 is the outermost award that can be supported on this record. *See Ramsey v. American Air Filter Co., Inc.,* 772 F.2d 1303, 1313 (7th Cir.1985) (reducing compensatory award to $35,000.00 where plaintiff felt humiliated after having been discriminatorily denied a temporary assignment, laid off without informing him of his recourse to bumping and bidding options, and reprimanded where there was no evidence that plaintiff required treatment for his emotional harm or that the depression lasted for any sustained period

of time); *AIC Security,* 55 F.3d at 1285–86 (upholding $50,000.00 award for emotional distress where terminally ill plaintiff suffered depression, rage, and fear after a discriminatory termination from a job which was a "major defining aspect" of his life and self-esteem); *Tullis v. Townley Engineering & Manufacturing Co., Inc.,* 243 F.3d 1058, 1066–68 (7th Cir.2001) (upholding award of $80,000.00 for emotional injury where plaintiff felt "degraded" and "backstabbed" when his employer objected to his unemployment claim and suffered financial difficulties such as having to borrow money from family to pay bills, falling behind on child support, and not being able to afford school clothes for his children as a result of his discriminatory lay off and inability to find substitute employment for a lengthy period of time); *Avitia,* 49 F.3d at 1229–30 (finding damages of $21,000.00 to be excessive where plaintiff cried after discriminatory discharge and suffered emotional distress for several years thereafter); *Fleming v. County of Kane,* 898 F.2d 553, 561–62 (7th Cir.1990) (reduction of damages from $80,000.00 to $40,000.00 was proper where plaintiff discharged for whistle-blowing activities suffered embarrassment, humiliation, depression, serious headaches, and sleeplessness); *Peeler v. Village of Kingston Mines,* 862 F.2d 135, 138 (7th Cir. 1988) ($50,000.00 award upheld where plaintiff's evidence demonstrated "[p]oignant scenes of distress and abysmal poverty" during his unemployment following discriminatory discharge where plaintiff was evicted, depended on charity to feed his family, used rags to diaper his child, could not afford a doctor when his children were sick, and suffered health problems.)

Accordingly, the Court finds that $100,000.00 is excessive compensation for the embarrassment, disappointment, inconvenience, and frustration that David expe-

rienced as compared to the amounts awarded in comparable, and arguably more egregious, cases. The Court therefore finds that Caterpillar's Motion for New Trial shall be granted on the issue of damages unless David accepts a remittitur reducing the $100,000.00 award to $50,000.00.

(2) Punitive Damages

The Court rejects Caterpillar's argument that a new trial is warranted because of allegedly excessive punitive damages for the same reasons it rejected its argument that a new trial is warranted because of excessive compensatory damages. The argument that the jury was motivated by passion and prejudice is negated by the fact that it found in favor of Caterpillar on several of David's claims. Two questions remain to be resolved: (1) was the question of punitive damages properly before the jury, and (2) was the amount awarded excessive.

■ Section 1981a(b)(1) provides:

A complaining party may recover punitive damages under this section against a respondent ... if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with *malice or with reckless indifference to the federally protected rights of an aggrieved individual.*

(Emphasis added). According to the Supreme Court, "The terms 'malice' or 'reckless indifference' [in § 1981a(b)(1) ] pertain to the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination." *Kolstad v. American Dental Ass'n.,* 527 U.S. 526, 119 S.Ct. 2118, 2124, 144 L.Ed.2d 494 (1999). The Court stated that it gained an understanding of these terms from its decision in *Smith v. Wade,* 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983), a decision recognized by Congress

in adopting the language of § 1981a(b)(1). *See Id.* The Supreme Court explained that in *Smith* it decided that "a jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Id., quoting Smith,* 461 U.S. at 56, 103 S.Ct. 1625. The *Kolstad* Court further explained:

While the *Smith* Court determined that it was unnecessary to show actual malice to qualify for a punitive award, ... its intent standard, at a minimum, required recklessness in its subjective form. The Court referred to a "subjective consciousness" of a risk of injury or illegality and a "criminal indifference to civil obligations.".... The Court thus compared the recklessness standard to the requirement that the defendants act with "knowledge of falsity or reckless disregard for the truth" before punitive awards are available in defamation actions, ... a subjective standard.... *Applying this standard in the context of 1981a, an employer must at least discriminate in the face of a perceived risk that its actions will violate federal law to be liable for punitive damages.*

There will be circumstances where intentional discrimination does not give rise to punitive damages liability under this standard. In some instances, the employer may simply be unaware of the relevant federal prohibition. There will be cases, moreover, in which the employer discriminates with the distinct belief that its discrimination is lawful. The underlying theory of discrimination may be novel or otherwise poorly recognized, or an employer may reasonably believe that its discrimination satisfies a bona fide occupational qualification defense or other exception to liability....

*Id.* at 2125 (emphasis added) (internal quotation marks omitted).

■ In this case, it is hard to imagine a situation where an employer in today's world as large as Caterpillar would be unaware of the federal prohibition against sex discrimination, or more specifically, the prohibition against retaliating against an employee for exercising her rights under Title VII. In fact, the record contains specific evidence of Caterpillar's written policy prohibiting such conduct. The Court concludes that the underlying theory of retaliation is neither poorly recognized nor novel, and it further concludes that an employer could not reasonably believe that not having engaged in protected activity is a bona fide occupational qualification. Based on these conclusions and the jury's determination that Caterpillar intentionally retaliated against David, the question of punitive damages was properly before the jury, and it was within the jury's province to award punitive damages. In other words, by intentionally retaliating against her after she complained about discriminatory promotion practices and filed her EEOC charge, Caterpillar acted "in the face of a perceived risk that its actions will violate federal law . . . ." *Id.*

■ That leaves the question of whether the $750,000.00 punitive damages award is excessive. The Court initially notes that even if David presented sufficient evidence to sustain an award of $750,000.00 for punitive damages, § 1981a(b)(3) requires that this amount be reduced. Section 1981a(b)(3)(A) provides, in relevant part:

The sum of the amount of compensatory damages awarded under this section for the future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, and the amount of punitive damages awarded under this section, shall not exceed, for each complaining party—

(D) in the case of a respondent who has more than 500 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $300,000.

David does not dispute that a remittitur pursuant to § 1981a is required in this case. Nor does she dispute that the applicable damage cap is set forth in § 1981a(b)(3)(D), but argues only that the award should not be reduced below the damages cap of $300,000.00. Thus, the applicable statute requires that David's punitive damages award be reduced at a minimum to $250,000.00.

■ The Seventh Circuit has suggested that the maximum available punitive damages awards should be reserved for the most egregious cases, such as "the legion of quid pro quo" sexual harassment cases. *See Hennessy v. Penril Datacomm Networks, Inc.,* 69 F.3d 1344, 1355–56 (7th Cir.1995). The Supreme Court's decision in *BMW of North America, Inc. v. Gore,* 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996), provides some additional guidance in making this inquiry. Although that case addressed the constitutionality of a punitive damages award, its findings have been used by lower courts to test excessiveness, as well. Factors to be considered in making this inquiry are: (1) the degree of reprehensibility of the conduct; (2) the ratio between the compensatory and punitive damages; and (3) the award's similarity to civil or criminal penalties that could be imposed for comparable misconduct. *Id.* at 575, 116 S.Ct. 1589.

The jury found that Caterpillar (acting through its corporate security department) purposefully retaliated against David for having exercised her statutorily protected right to challenge sexual discrimination by failing to accord her an equal opportunity for promotion. There was also evidence from which the jury could reasonably find

that another female security employee had been the victim of similar discriminatory animus and that Caterpillar attempted to conceal its improper motive by offering false justifications for its discriminatory decisions. The harm inflicted was not solely economic in nature, but also attacked the basic tenets of David's civil rights. The goals of Title VII mandate that the right to engage in protected activity must be zealously guarded, and Caterpillar's intentional or at best reckless disregard for this right makes this case slightly more serious than a pure discrimination claim but not as reprehensible as the quid pro quo cases discussed in *Hennessy*.

A punitive damages award that is five times the amount of compensatory damages is problematic and not warranted by the facts of this case. The Supreme Court noted in *BMW* that early statutes frequently provided for double, treble, and even quadruple damages and cited cases in which punitive damages awards of "more than 4 times the amount of compensatory damages" did not "cross the line into the area of constitutional impropriety" where the acts are particularly egregious. 517 U.S. at 581–82, 116 S.Ct. 1589. Although the ratio in and of itself should not be used as a bright line indicator of unreasonableness, the Court concludes that under the facts in this case, the ratio that would be presented by a punitive award of $250,000.00 does not evidence a reasonable relationship between the award and the particular harm that has and is likely to result from Caterpillar's misconduct.

Caterpillar is a large and prosperous company; it is not unreasonable to assume that "a sizeable award is both suitable and necessary to punish and deter a corporation of this size" from disregarding the statutory rights of its employees in the future. *AIC Security*, 55 F.3d at 1287. Furthermore, it is unlikely that a minimal deterrent would adequately motivate full future compliance, particularly in light of Caterpillar's continued claim that it took no unlawful action against David or the fact that she may have ultimately come out in a better position as a result of the retaliation or that it has treated her well since her move to the marketing department somehow makes its misconduct irrelevant.

That being said, while retaliation is a serious offense that must not be taken lightly, the situation presented here is not as reprehensible as many of the reported cases where the statutory maximum was found to be appropriate and does not approach the level of egregiousness necessary to justify punitive damages of more than three times the allowable compensatory damages. Put another way, on the record in this case, the Court finds that a punitive award of $250,000.00 would be excessive and shocking to the judicial conscience. *See McNabola v. Chicago Transit Authority*, 10 F.3d 501, 516 (7th Cir. 1993). Accordingly, the Court concludes that an additional reduction in the punitive damages award to $150,000.00, which would be three times the amount of compensatory damages, is required to demonstrate a reasonable relationship to the compensatory damages. The Court therefore finds that Caterpillar's Motion for New Trial shall be granted on the issue of damages unless David accepts a remittitur reducing the $750,000.00 award to $150,000.00.

## II. *Motion for New Trial*

Motions under Rule 59(e) allow the movant to apprize the Court of a manifest error of law or fact, or newly discovered evidence; they "do not provide a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or ad-

vance arguments that could and should have been presented to the district court prior to the judgment." *Bordelon v. Chicago School Reform Board of Trustees,* 233 F.3d 524, 529 (7th Cir.2000), *citing Moro v. Shell Oil Co.,* 91 F.3d 872, 876 (7th Cir. 1996). In other words, such motions should only be presented when the law or facts change significantly after the issue is presented to the Court, the Court has "patently misunderstood a party," has "made a decision outside the adversarial issues presented" to it, or has "made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales,* 906 F.2d 1185, 1191 (7th Cir.1990).

> A new trial may be granted as to all or any of the parties on all or any of the issues (1) in any action in which there has been a trial by jury, for any of the reasons for which trials have heretofore been granted in actions at law in the courts of the United States.

Fed.R.Civ.P. 59(a). A request for new trial based on the sufficiency of the evidence shall be granted only if the verdict is against the manifest weight of the evidence. *Tullis v. Townley Engineering and Manufacturing Co.,* 243 F.3d 1058, 1062 (7th Cir.2001). The verdict will not be set aside if there is a reasonable basis in the record to support the verdict. *Id.*

As the Court has already determined that there was a reasonable basis in the record to support the jury's verdict in this case, the verdict was not against the manifest weight of the evidence and Caterpillar is not entitled to a new trial under Rule 59. Accordingly, so long as David accepts the previously discussed remittiturs on damages, the alternative Motion for New Trial is denied; should she reject the remittiturs, the Court will order a new trial on the issue of damages.

## CONCLUSION

For the reasons set forth above, Caterpillar's Renewed Motion for Judgment as a Matter of Law or, Alternatively, for a New Trial [# 135] is GRANTED IN PART and DENIED IN PART. Unless within 14 days from the date of this Order, David files a remittitur of $650,000.00 of the judgment heretofore entered, which represents a reduction of compensatory damages from $100,000.00 to $50,000.00 and a reduction of punitive damages from $750,000.00 to $150,000.00, the judgment will be vacated and a new trial will be granted solely as to the amount of damages to be awarded.