Patricia L. VILLARRUEL,
Plaintiff–Appellant,

v.

GARY COMMUNITY SCHOOL
CORPORATION, Defendant–
Appellee.

No. 01–1574.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 27, 2001.

Decided Feb. 14, 2002.

Before BAUER, WOOD, and MANION, Circuit Judges.

## ORDER

Patricia Villarruel sued her former employer, the Gary Community School Corporation ("School Corporation"), for race and sex discrimination under Title VII, and disability discrimination under the ADA. Villarruel also alleged that the School Corporation retaliated against her for complaining about the discrimination, in violation of Title VII. The parties consented to judgment by a magistrate judge, who granted the School Corporation summary judgment. Villarruel appeals the grant of summary judgment on her sex discrimination and retaliation claims. We affirm.

## I.

Patricia Villarruel, a white female, began working for the Gary Community School Corporation in September 1996 as a "Computer Braille and P.C. Specialist." As a Braille Specialist, Villarruel was responsible for supporting the Visually Impaired Program within the Department of Special Education for the entire School Corporation. Specifically, Villarruel helped prepare educational materials, delivered them

to various schools within the school district, provided computer instruction to students, and generally assisted teachers and students within the Visually Impaired Program. Villarruel worked mainly out of Lew Wallace High School, but traveled to and worked at other schools within the School Corporation as needed.

Villarruel's immediate supervisor was Bashir Masoodi, a teacher and consultant for the Visually Impaired Program. Villarruel and Masoodi did not get along very well, and Villarruel contends that he created a hostile work environment based on her sex. Specifically, Villarruel claims that Masoodi yelled at her several times, sometimes using profanity including the word "bitch." Villarruel also contends that Masoodi would occasionally refer to her and another female classroom aide, Barbara Yelich, as "you women" and would tell her to "get out of my office, girl." During the 1997–98 school year, Masoodi also allegedly told Villarruel and Yelich "You're shitting up my program. Why can't you women keep your mouths shut. You women are always running back and telling people things."

In January 1998, Villarruel first complained about Masoodi, telling the Lew Wallace union representative that Masoodi was behaving in an abusive, intimidating and harassing manner. On March 5, 1998, Villarruel again complained about Masoodi, sending three memoranda to the assistant principal at Lew Wallace. Sometime in the spring of 1998, she also contacted Judy Cherry, the School Corporation affirmative action officer, and complained of Masoodi's behavior. In June 1998, Villarruel again went to Cherry complaining about her treatment by Masoodi. Then, in early July 1998, Villarruel filed a charge of discrimination and retaliation with the EEOC.[1]

The 1998–99 school year began shortly thereafter. Toward the beginning of the academic year, around October, the head of the Visually Impaired Program informed Villarruel that rather than working mainly out of Lew Wallace, she would spend Monday through Wednesday mornings at Lew Wallace and the remainder of the week working out of Lincoln, Melton and Bailly schools. According to the School Corporation, Villarruel was needed at these other schools on a more regular basis because the school corporation had recently obtained new computers for the visually impaired students at these schools and therefore Villarruel was needed to train the teachers and students on the upgraded equipment. But Villarruel's psychiatrist then informed the district that Villarruel had recently been placed on medications to control panic attacks and depression, and that the drugs made her drowsy. After receiving this information, the School Corporation allowed Villarruel to refrain from driving to the other schools for four to six weeks to give her time to adjust to the prescription.

This temporary change did not satisfy Villarruel. Rather, unhappy with her continued treatment, Villarruel sued the School Corporation on February 2, 1999, alleging race and sex discrimination and retaliation in violation of Title VII. At the time that Villarruel sued the School Corporation, she continued to work there. However, Villarruel stopped going to work as

1. After Villarruel complained, the School Corporation held several meetings and investigated Villarruel's complaints. At these meetings, Masoodi was informed that the alleged behavior was unacceptable, and he made a commitment not to raise his voice at Villarruel. However, during the investigation, the school also learned that Villarruel was often aggressive, insubordinate and uncooperative. In fact, at one meeting, Villarruel walked out even after the assistant principal directed her to stay.

of May 4, 1999, and on May 27, 1999, she sent the School Corporation notice that she was resigning effective May 6, 1999. In June 1999, Villarruel filed an amended complaint against the School Corporation adding a claim under the ADA.

Villarruel and the School Corporation consented to disposition before a magistrate judge. The School Corporation then moved for summary judgment, which the magistrate judge granted concluding the alleged harassment was not severe and pervasive and thus Villarruel could not succeed on her race and sex discrimination claims under Title VII. The court also concluded that the School Corporation had reasonably accommodated Villarruel's disabilities. Finally, the court concluded that Villarruel failed to establish that she suffered an adverse employment action because of her complaints about Masoodi's behavior. Villarruel appeals, arguing that she presented sufficient evidence of a hostile work environment based on her sex and of retaliation to avoid summary judgment; Villarruel does not appeal the magistrate judge's ruling on her race discrimination and ADA claims.

## II.

"We review a grant of summary judgment de novo, construing the evidence in the light most favorable to the nonmoving party." *Curry v. Menard, Inc.,* 270 F.3d 473, 477 (7th Cir.2001). Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56.

### A. Hostile Environment Claim

"Title VII provides that '[i]t shall be an unlawful employment practice for an employer—(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."' *Johnson v. Zema Sys. Corp.,* 170 F.3d 734, 742 (7th Cir.1999) (quoting 42 U.S.C. § 2000e–2(a)(1)). The Supreme Court has held that "Title VII's ban on gender discrimination is violated when 'discrimination based on sex ... creates a hostile or abusive work environment."' *Hardin v. S.C. Johnson & Son, Inc.,* 167 F.3d 340, 345 (7th Cir.1999) (*citing Meritor Sav. Bank v. Vinson,* 477 U.S. 57, 66, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)). However, to be actionable under Title VII the harassment must be "sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.'" *Meritor,* 477 U.S. at 67, 106 S.Ct. 2399. Whether harassment is sufficiently severe and pervasive to be actionable under Title VII turns on a constellation of factors that "include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295, (1993).

The magistrate judge concluded that "although Masoodi's treatment of Villarruel over the three-year period was occasionally unpleasant, the treatment does not rise to the level necessary to create an objectively hostile work environment." We agree. Over the three years that she worked with Masoodi, he occasionally yelled at her and sometimes used profanity. But Title VII is not a "general civility code," and it is not intended to remedy complaints attacking "the ordinary tribulations of the workplace, such as sporadic use of abusive language ...." *Faragher v. City of Boca Raton,* 524 U.S. 775, 788, 118

S.Ct. 2275, 141 L.Ed.2d 662 (1998). Rather, the occasional use of abusive language—which is the extent of Villarruel's hostile environment claim—does not constitute harassment in violation of Title VII. *Id. See also, Savino v. C.P. Hall Co.,* 199 F.3d 925, 933 (7th Cir.1999) ("[T]he sporadic use of abusive language, gender-related jokes, and occasional teasing are fairly commonplace in some employment settings and do not amount to actionable harassment.") (internal quotation omitted). Accordingly, the School Corporation was entitled to summary judgment on Villarruel's hostile environment claim.

### B. Retaliation

Villarruel also contends that the School Corporation retaliated against her for complaining of Masoodi's conduct. To establish a prima facie case of retaliation under Title VII, Villarruel must show that (1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action by her employer; and (3) there is a causal connection between the adverse action and the protected activity. *Mathur v. Board of Trustees,* 207 F.3d 938, 941–42 (7th Cir.2000).

It is undisputed that Villarruel engaged in protected expression beginning in March 1998 when she complained to the School Corporation about Masoodi's conduct. However, the magistrate judge concluded that Villarruel failed to established that she suffered an adverse employment action, and that her claim also "suffers from a lack of evidence establishing a causal connection between the actions that Villarruel complains of and her protected activity, . . ." Once again, we agree. While Villarruel cites numerous events which she contends constituted adverse employment actions, as discussed below, none constitutes "a significant change in employment status" as is necessary for an employment

action to be considered adverse. *Bell v. Environmental Protection Agency,* 232 F.3d 546, 555 (7th Cir.2000).

■ Several of Villarruel's complaints involved absolutely no change in her employment status, much less a significant one. For instance, Villarruel claims that after she complained about Masoodi's behavior, her absenteeism became an issue, and that Masoodi began complaining to the school that she was harassing him. However, there is no evidence that these complaints were undeserved, or that the School Corporation took any action against Villarruel based on these complaints. She also claims that the School Corporation retaliated against her by ignoring her complaints about Masoodi. Even if true, this also did not affect her employment status, although it could constitute proof that her employer negligently responded to a hostile environment, if one had existed. Similarly, Villarruel's complaint that she was not "invited" back to her position for the 1998–1999 school year rings hollow because it is uncontested that Villarruel was retained for the 1998–1999 school year even though she did not receive a formal "welcome back" letter.

■ Villarruel also contends that Masoodi did not take seriously her complaint regarding a learning-disabled student who touched her in an inappropriate way. But there is no evidence that it was Masoodi's responsibility to punish another teacher's students, and, in any event, it is undisputed that the student was punished by the school administration based on Villarruel's complaints. Moreover, Villarruel does not contend that she suffered any additional harassment at the hands of the student due to Masoodi's alleged failure to act. Thus, Masoodi's alleged failure to respond did not alter the Villarruel's employment status, and therefore was not an adverse action for purposes of Title VII.

■ Villarruel's next allegation of retaliation is that the School Corporation refused to hire her for the 1998 summer school term because of her complaints. However, the evidence established that the Visually Impaired Program did not operate over the summer, and thus there was no opening for her to fill. While Villarruel contends that she should have been hired for another summer school position, she fails to present any evidence that she was qualified for another position. Thus, Villarruel failed to present evidence demonstrating the requisite change in employment status.

■ Villarruel also contends that after she complained about Masoodi, his abusive conduct intensified. However, Villarruel failed to present any evidence demonstrating this. Moreover, even if Villarruel made such a showing, all of Masoodi's allegedly abusive conduct taken together did not constitute severe and pervasive harassment. Accordingly, any increase in the allegedly abusive conduct could not constitute a significant change in her employment conditions. Villarruel's complaint that Masoodi took away a key to a computer room and her work area also does not constitute an adverse employment action as, at most, this constituted a minor inconvenience, as opposed to a material change in her employment status.[2]

Villarruel's next complaints all concern the change in her work schedule implemented at the beginning of the 1998 school year. Specifically, Villarruel claims that the School Corporation retaliated against her by requiring her to travel to other schools, rather than working mainly out of Lew Wallace. She also claims that she had nothing to do at those other locations. Additionally, she claims that the School Corporation ignored her request to change back to her schedule of working out of Lew Wallace as an accommodation for her disabilities, in retaliation for her complaints.

■ In addressing these complaints, we start with Villarruel's contention that the School Corporation ignored her request for an accommodation. It is important to note that this claim is not an ADA claim; rather, Villarruel is claiming that the School Corporation refused to accommodate her disabilities in retaliation for her complaints about Masoodi. However, the evidence establishes that the School Corporation immediately altered Villarruel's schedule as soon as it received a letter from Villarruel's psychiatrist requesting an accommodation for Villarruel. While Villarruel claims that the School Corporation retaliated against her by failing to permanently return her to Lew Wallace, Villarruel's own psychiatrist did not request such an accommodation. Rather, her psychiatrist requested that Villarruel's schedule be temporarily changed so as to allow Villarruel to adjust to a new prescription medication. Because the School Corporation provided the accommodation requested by Villarruel's psychiatrist, she has not established an adverse employment action.

■ The second aspect of her complaint concerns the requirement that Villarruel work out of Lew Wallace only on Monday through Wednesday mornings, reporting to other schools for the remainder of the work week. While Villarruel was not happy with this change, "not everything that makes an employee unhappy is action-

---

**2.** Moreover, the record demonstrates that rather than an attempt at petty revenge, Villarruel had taken the only key to the computer room, and that the key was supposed to be kept by the supervisor. Since there was only one key, and since Villarruel no longer worked mainly from Lew Wallace, the key was given to Villarruel's immediate supervisor who needed access to the computer room while Villarruel was at other locations.

able." *Drake v.. Minn. Mining & Mfg. Co.*, 134 F.3d 878, 885 (7th Cir.1998). Moreover, the adverse action must be "more than a mere inconvenience or an alteration of job responsibilities." *Oest v. Ill. Dep't of Corr.*, 240 F.3d 605, 610 (7th Cir.2001) (internal quotation omitted). In this case, at best this change constituted only a minor alteration of Villarruel's job responsibilities, as she was always required to travel to other schools within the district. Accordingly this change did not constitute an actionable "adverse action" under Title VII.[3]

■ Finally, Villarruel contends that she did not receive the standard salary increase provided by the School Corporation and that this was in retaliation for her complaints about Masoodi's conduct. Villarruel, however, fails to present any evidence as to this claimed standard salary increase, or evidence that others who did not complain, but who were similarly qualified, received a higher raise. In short, she has failed to present any evidence to support this alleged adverse action, and therefore the School Corporation was entitled to summary judgment on this theory as well.[4]

### III.

While Villarruel's immediate supervisor at the School Corporation at times yelled at her, his behavior did not reach the level of severe and pervasive harassment. Accordingly, the magistrate judge properly granted the School Corporation sum-

mary judgment on Villarruel's Title VII hostile environment claim. The magistrate judge also properly granted the School Corporation summary judgment on Villarruel's retaliation claim because none of the behavior of which Villarruel complains constituted a material adverse employment action. We AFFIRM.

---

**3.** Villarruel also failed to present evidence demonstrating causation. Specifically, she failed to show that her complaints about Masoodi caused the School Corporation to require her to work part-time out of the other schools. Rather, the evidence establishes that Villaruel's new schedule was implemented because the school corporation had received a grant to purchase new computers and Villarruel was needed at the other schools to train the students and staff on the new equipment.

**4.** Villarruel also argues that even if these alleged instances of retaliation individually did not constitute a significant change in her employment statute, taken together they do. We disagree. As noted, many of the incidents did not affect her employment status at all. And of the few that did, even considered together, they were minor inconveniences rather than adverse employment actions.