Gary PEELER, Plaintiff–Appellee,

v.

VILLAGE OF KINGSTON MINES, a
municipal corporation,
Defendant–Appellant.

Nos. 87–3014, 87–3035.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 30, 1988.

Decided Nov. 10, 1988.

Rehearing Denied Dec. 15, 1988.

Elizabeth A. Brown, Judge & Knight, Ltd., Park Ridge, Ill., for defendant-appellant.

Gerard A. Serritella, Jr., Peoria, Ill., for plaintiff-appellee.

Before CUMMINGS, FLAUM and KANNE, Circuit Judges.

CUMMINGS, Circuit Judge.

In Count IV, the only remaining viable Count of his amended complaint, plaintiff sued the Village of Kingston Mines, Illinois, for damages resulting from his retaliatory discharge by Mayor Melvin Collins.[1] At the time, plaintiff was serving as a village police officer. He sought $250,000 in compensatory damages. A claim for

---

1. Codefendant Collins was dropped from the suit on motion of plaintiff before commencement of the jury trial (R. Item 71). Collins had been president of this small village's board of trustees. In Kingston Mines, that officer is known as the mayor. Collins was one of two police officers in Kingston Mines, the other being the plaintiff.

punitive damages was voluntarily stricken in view of the village's immunity from such damages under Illinois law. The jury awarded Peeler $400 for two weeks lost wages and $50,000 for emotional distress and judgment was entered for $50,400. On appeal defendant assails the $50,000 award on several grounds. We affirm.

The evidence showed that on July 24, 1985, plaintiff was employed for six or eight weeks to a year[2] as a village police officer for $5 per hour. On September 2, 1985, at 1:00 A.M., while working at the Kingston Mines Homecoming Fair, plaintiff arrested Mayor Collins, who admittedly committed a battery upon former Mayor Steven Hedge during an argument. At the time Collins told plaintiff "I'll get you. I'll get back with you." When Collins was released from jail at 5:00 A.M. that same morning, he discharged plaintiff, six weeks after plaintiff was hired. The incident resulted in 25–30 newspaper articles in the vicinity.

Peeler thereafter applied for a job with at least 14 employers, who thus learned that he had been discharged for arresting Mayor Collins. That revelation plus the newspaper publicity prevented him from obtaining another job until Caterpillar Tractor Co. eventually rehired him. During plaintiff's unemployment he and his family were evicted from their house and were forced to live for 3 days in a truck. He depended in part on charity to feed his family, spending only $25 a week on food for seven people, eating starchy food and only once a day. Rags were used for diapers on his youngest child, and friends donated clothes for his five children. He could not afford a doctor when his children were sick. He could not sleep, had chest pains and a constantly upset stomach. He had trouble breathing, his blood pressure rose, and he gained 60 pounds from the cheap, starchy food regimen.

During this period, his familial relations suffered, particularly between plaintiff and his wife. The family had to skip Thanksgiving dinner; a charitable nun provided Christmas dinner. They could not afford baby food and had to be helped out with food baskets from friends. The family went without Christmas or birthday gifts. He had to sell his furniture, his children cried a lot, and his wife became very depressed. Even the family cat died because he could not afford a vet's fee. After holding out for months and though ashamed, he was forced to go on welfare in February 1986.

Defendant submitted evidence of Mayor Collins' reasons for plaintiff's firing and also called the village clerk. In turn plaintiff called two supporting witnesses. Since the jury obviously credited plaintiff's account of the facts, it would be futile to detail defendant's evidence except to note that Mayor Collins' sister, the village clerk, testified that at Mayor Collins' direction she wrote plaintiff's counsel that Peeler had been fired for insubordination and was free to attend a January 19, 1986, village meeting on the subject. On advice of counsel she sent plaintiff's counsel no other reason for the discharge, although Collins had given her a list of 16 reasons to send. Because of this failure to send the promised list, on advice of counsel plaintiff did not testify at the January meeting.[3] The mayor also disputed Peeler's testimony that employment was possibly for a year and stated it was only for 6 to 8 weeks. The jury credited the 8–week term and accordingly gave plaintiff $400 for lost wages during the last two weeks of the period.

## I. *Recovery for Emotional Distress*

In this Court, defendant has not faulted any of the instructions given or the form of verdict. They are relevant to show what the jury considered in assessing damages. At the conference thereon, the parties conceded that retaliatory discharge is an inten-

---

**2.** The parties dispute the scheduled tenure of plaintiff's employment. Defendant argues it was from six to eight weeks while plaintiff claims it may have been up to a year.

**3.** The original complaint was filed three and a half months earlier.

tional tort in Illinois (Tr. 309).[4] The jurors were thereafter instructed in pertinent part:

1. It is against the public policy of Illinois for a village to fire a police officer in retaliation for his making a lawful arrest (Tr. 368–369). (Defendant does not argue to the contrary on appeal.)

2. An employer is not liable in tort for discharging an at-will employee because it erroneously believes that the employee was insubordinate or performed his duties [un]satisfactorily[5] (Tr. 369).

3. If the jurors decide liability in plaintiff's favor, he is entitled to recover for lost income, humiliation, embarrassment and emotional distress (Tr. 370). (The inclusion of the latter three items forms defendant's principal argument on appeal.)

4. The jurors may only award a successful plaintiff such damages as will reasonably compensate him (Tr. 371).

5. The jury is not permitted to award speculative damages (Tr. 371).

These instructions were sent into the jury room (Tr. 373), and the jury verdict form contained two damages lines in the event of plaintiff's recovery. The first of these dollar lines was "for lost income" and the second "for humiliation, emotional distress and embarrassment" (Tr. 372).

In this setting, defendant's main argument on appeal is that Illinois law does not permit any recovery for emotional distress in a retaliatory discharge case. At the times the parties briefed this point, they referred to no such Illinois case. However, before oral argument we discovered *Sloan v. Jasper City Community Unit School District No. 1,* 167 Ill.App.3d 867, 118 Ill. Dec. 879, 522 N.E.2d 334 (Fifth Dist.1988), and defense counsel commendably referred to it during oral argument (also by letter dated the day before oral argument and distributed to the panel afterwards) even though it was adverse to her position. *Sloan* squarely holds that in an Illinois retaliatory discharge action, a successful plaintiff is entitled to recover damages for emotional distress. Since the Village of Kingston Mines did not petition the Illinois Supreme Court for leave to appeal, *Sloan* remains the only known reported Illinois authority on point.

What weight must we give *Sloan?* The answer is clear. The latest discussion by the Supreme Court of the United States appears in a footnote in *Hicks on behalf of Feiock v. Feiock,* —— U.S. ——, 108 S.Ct. 1423, 1428–1429 n. 3, 99 L.Ed.2d 721 (1988), which quoted with approval from *West v. American Telephone & Telegraph Co.,* 311 U.S. 223, 233, 237, 61 S.Ct. 179, 181–182, 183–184, 85 L.Ed. 139 (1940), that a federal court should follow an intermediate appellate court's ruling on state law, especially if the highest state court has refused to review the ruling, unless there is "other persuasive data that the highest court of the state would decide otherwise." *West* was also approved in *Commissioner v. Estate of Bosch,* 387 U.S. 456, 464–465, 87 S.Ct. 1776, 1782–1783, 18 L.Ed.2d 886 (1967), which added that an intermediate state court's decision should be given some, but "not controlling" weight where the highest state court "has not spoken on the point," citing *King v. Order of United Commercial Travelers,* 333 U.S. 153, 160–161, 68 S.Ct. 488, 492–493, 92 L.Ed. 608 (1948).

Our own Court has discussed this subject a number of times recently. The latest pronouncement appears in *Phelps v. Sherwood Industries,* 836 F.2d 296, 306 (7th Cir.1987), where we concluded that we should treat an intermediate state court's decision as authoritative in the absence of a state supreme court decision, unless there is "good reason to believe that the state's highest court would reject" the decision of the intermediate court.

Defendant has not convinced us that *Sloan* would be rejected by the Supreme Court of Illinois nor given us "other persuasive data" contra *Sloan.* Therefore, *Sloan* will be deemed to represent Illinois

---

4. The same concession appears in defendant's brief at p. 23.

5. The transcript erroneously states "satisfactorily."

law at this time. This accords with the view of 4 Restatement of Torts (2d) Sections 905 and 905(i) that compensatory damages are recoverable for emotional distress if they are what a reasonable person could possibly estimate as fair compensation.

■ The tort of retaliatory discharge was first established in Illinois in 1978 in *Kelsay v. Motorola, Inc.*, 74 Ill.2d 172, 23 Ill.Dec. 559, 384 N.E.2d 353, which prospectively approved of punitive damages in such instances. *Palmateer v. International Harvester Co.*, 85 Ill.2d 124, 133–134, 52 Ill.Dec. 13, 421 N.E.2d 876 (1981), and *Barr v. Kelso–Burnett Co.*, 106 Ill.2d 520, 88 Ill.Dec. 628, 478 N.E.2d 1354 (1985), explained that recovery for this tort is appropriate when a defendant violates a clear mandate of public policy. Here defendant is not challenging the district judge's decision that a discharge in retaliation for a valid arrest violates the public policy of Illinois (Tr. 368–369). None of the Illinois Supreme Court cases has construed this tort so narrowly as to indicate that compensatory damages for emotional distress stemming therefrom would be prohibited even though villages, as public entities, are immune from punitive damages, *Boyles v. Greater Peoria Mass Transit*, 113 Ill.2d 545, 555–556, 101 Ill.Dec. 847, 499 N.E.2d 435 (1986). Finally, *Midgett v. Sackett–Chicago, Inc.*, 105 Ill.2d 143, 149, 85 Ill. Dec. 475, 473 N.E.2d 1280 (1984), expansively permits recovery for this tort even though there is a remedy under the collective bargaining agreement, thus refusing to follow *Lamb v. Briggs Manufacturing*, 700 F.2d 1092 (1983), from this Court. In light of these cases, Judge Mihm has not enlarged this tort in contravention of *Barr*, 106 Ill.2d at 525, 88 Ill.Dec. 628, 478 N.E.2d 1354. Following *Sloan*, we hold that Illinois law permits the recovery of compensatory damages for emotional distress caused by a retaliatory discharge.

## II. *Causal Connection*

■ The village asserts that plaintiff failed to show any causal connection between his discharge and the ensuing emotional distress. We disagree. The record is replete with testimony that the reason he was unable to secure other employment for a considerable period was because of his discharge and the publicity attendant upon it. Poignant scenes of distress and abysmal poverty are revealed by the evidence until at length plaintiff secured re-employment at Caterpillar Tractor Co. The jury was carefully instructed not to find for plaintiff unless his discharge "was the proximate cause of the injury or damage to the plaintiff" (Tr. 370). The evidence, in light of that instruction, fully supplies the needed causal connection.

## III. *Remedy under 42 U.S.C. § 1983*

Defendant asserts that since Peeler had a remedy under the Civil Rights Act of 1871 (42 U.S.C. § 1983) for deprivation of his constitutional rights, he was barred from a retaliatory discharge claim. However, in contrast to cases relied upon by the village,[6] Peeler voluntarily dismissed the counts of his amended complaint containing his Section 1983 claims and was not pursuing both remedies. This was his prerogative, and the district judge was justified in retaining the pendant claim for retaliatory discharge in Count IV because "substantial judicial resources had already been committed" and "sending the case to another [state] court would cause substantial duplication of effort" (R. Item 86). *Moses v. County of Kenosha*, 826 F.2d 708, 710, 711 (7th Cir.1987). Since defendant did not renew this Civil Rights Act argument in defendant's reply brief or during oral argument, it need not be considered further.

## IV. *Evidence of Retaliatory Discharge*

■ Although not presented in its reply brief or at oral argument, defendant's principal brief submitted that plaintiff failed to

---

**6.** In the three district court cases cited by defendant, and unlike Peeler, the plaintiffs were pursuing multiple similar remedies. *Busa v. Barnes*, 646 F.Supp. 615 (N.D.Ill.1986); *Gutier-*

*rez v. City of Chicago*, 605 F.Supp. 973 (N.D.Ill. 1985); *Brudnicki v. General Electric Co.*, 535 F.Supp. 84 (N.D.Ill.1982).

show the retaliatory nature of the discharge. Such a contention is frivolous. At 5:00 A.M., immediately after being released from jail and a scant four hours after his arrest, Village Mayor Collins discharged plaintiff. Evidence showed, and the jury manifestly believed, that at the time of Collins' arrest for battery, he told plaintiff "I'll get you. I'll get back with you." Collins' later excuses for firing Peeler were shown to be pretextual. Retaliation was clearly the motive for firing plaintiff.

## V. Conjecture, Guesswork and Speculation of Jury

In its principal brief only, the village asserts that the verdict of $50,000 was based solely on conjecture, guesswork and speculation. The amended complaint sought $250,000 in compensatory damages. The jury was carefully instructed to award plaintiff, if he were successful, only such damages as would reasonably compensate him. It was told that it could not award speculative damages. With such instructions and with ample evidence of the great trauma caused plaintiff and his family by the retaliatory discharge, this argument is strictly a makeweight.

The village has not requested a new trial on the ground that the $50,000 awarded was excessive. Rather, it insists that plaintiff was entitled to recover nothing for the humiliation, embarrassment and emotional distress shown again and again in the record. In the absence of any relevant Illinois case brought to our attention, *Malik v. Apex International Alloy, Inc.*, 762 F.2d 77 (10th Cir.1985), is instructive. There, a jury awarded Malik $50,000 in actual and $75,000 in punitive damages resulting from his retaliatory discharge for filing a workman's compensation claim. As here, Malik testified "concerning his unsuccessful efforts to find another job and the effect this had on his family and himself." 762 F.2d at 80. The Tenth Circuit refused to order a new trial or remittitur of $100,000 because it did not consider the $125,000 verdict grossly excessive. Since the facts of *Malik* and this case are so similar, we too consider the damages

shown to be more than sufficient to uphold the $50,000 verdict for mental anguish. If we were the jurors, the amount of the verdict might have been less, but since the award was based on sufficient evidence, it may not be set aside.

JUDGMENT AFFIRMED.